GARY M. RESTAINO
United States Attorney
District of Arizona

ANDREW C. STONE
Arizona State Bar No. 026543
SETH T. GOERTZ
Arizona State Bar No. 031645
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Email: Andrew.Stone@usdoj.gov
       Seth.Goertz@usdoj.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>               Plaintiff,<br><br>    vs.<br><br>Dale Lawrence Hipes,<br><br>               Defendant. | CR-21-00199-PHX-MTL<br><br>**UNITED STATES' TRIAL MEMORANDUM** |

This memorandum addresses two issues that are likely to arise at trial. The first involves the potential for Defendant to raise an inappropriate good faith defense. Defendant may claim that despite any misrepresentations regarding his relationship to 3M, he always hoped to provide his victims with N95 masks. But that argument, and any related defense, flips the good faith defense on its head because it does not focus on the alleged misrepresentations—and Defendant's state of mind when he made them—but on Defendant's post-hoc efforts to remedy his deception. The second issue concerns Defendant's potential to raise a contract-based theory of defense. Indeed, it appears that Defendant may argue he was contractually entitled to retain $4.65 million from a sale that never occurred due to his own "lost profits" pursuant to the Uniform Commercial Code

("U.C.C."). Not only is Defendant mistaken as to the U.C.C., issues of contract law are plainly irrelevant to a wire fraud prosecution and will only serve to confuse the jury.

## BACKGROUND

This case is about the $4.65 million that Defendant stole following the botched sale of 3M N95 facemasks during the height of the COVID-19 pandemic. Following the onset of the COVID-19 pandemic, Defendant created a company (BRI Supply, Inc.) for the purpose of distributing personal protective equipment. Within weeks of founding the company, Defendant began telling people that he was an authorized 3M distributor with access to millions of N95 facemasks. Defendant also claimed that any funds used to purchase facemasks would be directed to an escrow account, where the money would remain safe until any product was delivered. But neither claim was true. Defendant had no relationship with 3M, no ability to sell facemasks directly from 3M, and failed to maintain buyers' money in any type of escrow account.

Nevertheless, in May 2020, Defendant agreed to "sell" nine million 3M N95 facemasks to the State of Texas for its Emergency Covid Task Force. Although the masks were to be delivered to the State of Texas—for a purchase price of $16.65 million—the buyer was a Texas-based philanthropist who was attempting to help Texas secure much needed personal protective equipment during the pandemic's early days.

Prior to the sale, Defendant told the buyer's representative, Kim Shafer, that the only way to ensure delivery of the masks was to pay in advance, so that's what Kim Shafer did. And to calm Shafer's fears about paying such a large amount up-front, Defendant told her that the funds would be held in a 3M escrow account until the masks were delivered. But it was all a lie. Defendant didn't have access to 9 million masks—let alone a contact at 3M—and the funds didn't go into an escrow account, they went into Defendant's corporate bank account, where Defendant quickly used more than $2 million to purchase a home.

After failing to deliver the masks, Defendant only returned a portion ($12 million) of the $16.65 purchase price. Defendant subsequently acknowledged that the remaining

$4.65 million was due and owing (he even offered to pay it back with interest), but he eventually changed his mind and kept the money. In the end, the State of Texas didn't get a single mask, and Defendant kept $4.65 million.

### 1. **Defendant's Potential Good-Faith Defense.**

At trial, Defendant might claim that he could not have had any criminal intent because he always intended to provide the buyer with facemasks. That is, after receiving $16.65 million from the buyer, he attempted to obtain masks from various sources in good faith. But that's not how the good faith defense works. Defendant cannot misrepresent his relationship with 3M on the front end—thereby inducing the buyer to part $16.65 million— and evade responsibility for that misrepresentation by pointing to after-the-fact efforts to deliver facemasks.

Put simply, good faith attaches to Defendant's intent at the time he made the misrepresentations in question, it does not attach after-the-fact while Defendant was attempting to fix the harm he caused. "While an honest, good-faith belief in the truth of the misrepresentations may negate intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no defense at all." *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986); *see also United States v. Hickey*, 580 F.3d 922, 931 (9th Cir. 2009) (finding that the trial court properly excluded expert testimony on good faith); *United States v. Holmes*, 2021 WL 2044470, 53-54 (N.D. Cal., May 22, 2021) (Granting government motion "to preclude only the argument that Holmes knowingly made misrepresentations but had a good-faith belief that her alleged victims would be repaid or otherwise suffer no harm.").

This means that even if Defendant engaged in efforts to obtain 3M facemasks, he would still be guilty of wire fraud if the statements he made to induce the sale (and to retain the $4.65 million) meet the elements of 18 U.S.C. § 1343. The Court should, therefore, exclude evidence and arguments that Defendant engaged in after-the-fact efforts to provide facemasks.

## 2. **Principles of Contract Law, and the U.C.C., are Irrelevant.**

A second category of evidence that Defendant may seek to introduce involves the U.C.C. and contract law generally. But this line of argument is inappropriate, and it is irrelevant. Both in the Ninth Circuit, and in courts throughout the country, it is black-letter law that the principles of civil contract law do not apply in a criminal fraud prosecution—not least because of their likelihood to confuse the jury.

For instance, in *Rathburn*, the Sixth Circuit held that contract law principles were irrelevant in a wire fraud prosecution: "The government charged Rathburn with wire fraud—not breach of contract. The elements of wire fraud are separate and distinct from Michigan contract law. . . . Michigan contract law is irrelevant to the federal charge of wire fraud." *United States v. Rathburn*, 771 F. App'x 614, 626 (6th Cir. 2019)). Likewise, in *Perry*, the Fifth Circuit found that "'[m]aterial' false statements are not limited to those representations that could be enforced in a contract dispute . . . 'material' false statements are merely those that have a natural tendency to influence, or [are] capable of influencing, the decision of the person to whom they are addressed." *United States v. Perry*, 537 F. App'x 347, 349 (5th Cir. 2013) (internal quotation marks omitted); *see also United States v. Higgins*, No. 3:18-CR-186, 2022 WL 36511, at *7-8 (S.D. Ohio Jan. 4, 2022) (excluding testimony of defendant's contract law expert because "[c]ontract law and interpretation, in cases such as this, are irrelevant to mail fraud charges. . . . create a danger of impermissibly confusing the issues or misleading the jury . . . [and] has a high likelihood to confuse the issues between contract law principles and mail fraud principles, with that potential confusion substantially outweighing any probative value.").[1]

---

[1] *See also United States v. Dees*, 34 F.3d 838, 842–43 (9th Cir. 1994) (The Court provided the following jury instruction following a question regarding the binding nature of a verbal agreement in a mail and wire fraud prosecution: "This is a case which claims—in which the government claims it was fraud. And the question is not whether or not there was a binding agreement, but whether or not there were, as indicated in the elements, false promises or statements made by the defendant, the defendant knew that the promises or statements were false or fraudulent, that the statements were of a kind that would reasonably influence a person to part with money or property, defendant acted with the intent to defraud under those circumstances, and that the defendant used or caused to be used the mails to carry out, or attempt to carry out the scheme. This does not involve the

The same is true here.  To prevent juror confusion and plainly irrelevant testimony, the Court should prohibit the Defendant from introducing any evidence related to contract law principles or the U.C.C.

Respectfully submitted this 13th day of March, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Seth T. Goertz*
ANDREW C. STONE
SETH GOERTZ
Assistant U.S. Attorneys

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 13th day of March, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants:

Mark Berardoni
*Attorney for Defendant*

*s/ Seth T. Goertz*
U.S. Attorney's Office

question of a breach of contract. This is not a breach of contract case.").