**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-21-00199-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Dale Lawrence Hipes, | |
| Defendant. | |

Pending before the Court is Defendant Dale Lawrence Hipes' Motion for New Trial (Doc. 98). For the following reasons, the Court denies the Motion.

**I.**

On March 24, 2021, a grand jury indicted Dale Hipes on a variety of charges stemming from his promise to deliver 9 million 3M-branded N95 respirators (the "3M masks") at the height of the COVID-19 pandemic. (Doc. 21.) Specifically, Hipes was charged with four counts of Wire Fraud in violation of 18 U.S.C. § 1343 and four counts of Transactional Money Laundering in violation of 18 U.S.C. § 1957(a). (*Id.*)

In April 2020, Hipes established BRI Supply, Inc. ("BRI") for the purpose of selling personal protective equipment ("PPE"). As Chief Executive Officer of BRI, Hipes sought to enter into procurement agreements for 3M masks. The government charged that Hipes misrepresented two key facts to potential PPE buyers. First, that BRI was an authorized 3M distributor with direct access to the 3M masks and, second, that any money wired to BRI would be held in a 3M escrow account pending delivery of the masks. The government

alleged that, in reliance on these misrepresentations, a buyer paid a total of $16.65 million to BRI in exchange for 9 million 3M masks. Hipes, however, never supplied a single 3M mask in exchange for the $16.65 million and, while Hipes eventually returned $12 million, he retained $4.65 million for himself. Although Hipes emailed the buyer's brokers that he was working to repay the $4.65 million, he instead used these funds to purchase a $2 million residence, a Winnebago trailer, and a Kawasaki utility vehicle.

At trial, the government argued that Hipes knowingly and willfully misrepresented that he was a 3M authorized distributor and that the buyer's funds would be held in a 3M escrow account, when neither was true. As it was largely undisputed that BRI was not and has never been a 3M authorized distributor, Hipes argued that he never misrepresented his or BRI's relationship with 3M. Hipes now maintains that the buyer and his brokers were aware that BRI solely had a relationship with purported 3M intermediaries, and that Hipes would source the masks, if any, from these intermediaries rather than 3M itself.

After five days of trial, and nearly two days of deliberations, a jury convicted Hipes on four counts of Wire Fraud and three counts of Transactional Money Laundering. (Doc. 85.) Hipes now moves for a new trial on the grounds that "newly discovered" attachments to certain emails demonstrate that one of the government's witnesses, Mr. Charles Brown, was, at the time, aware that BRI was not an authorized 3M distributor. (Doc. 98 at 5−6.)

**II.**

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). To prevail on a Rule 33 motion for a new trial based on newly discovered evidence, a defendant must satisfy a five-part test:

> (1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal.

*United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (quoting *United States v. Kulczyk*, 931 F.2d 542, 548 (9th Cir. 1991)). Although the test is generally stated as comprising five elements, the final three are largely duplicative. Newly discovered evidence is "material" if its use in a subsequent new trial "would probably result in acquittal," and this usually requires that such newly discovered evidence be more than merely "cumulative" or "impeaching." *See United States v. Krasny*, 607 F.2d 840, 845 n.3 (9th Cir. 1979) (explaining that the materiality and probability prongs "are really two means of measuring the same thing"). In general, a Rule 33 motion for a new trial "should be granted only in exceptional cases in which the evidence preponderates highly against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (quoting 2 Wright, *Federal Practice and Procedure: Criminal* § 553 at 487 (1969)).

### III.

Hipes' Motion focuses on the government's allegations that he misrepresented his relationship with 3M. (Doc. 98 at 3.) Hipes maintains that, of the witnesses who testified that he misrepresented BRI's relationship with 3M, "[b]y far Mr. Charles Brown's testimony was the most crucial for corroborating the Government's assertion on this point." (*Id.*) Indeed, according to Hipes, "Mr. Brown's testimony was a critical factor in the Government sustaining it's [sic] burden of proof to the jury . . . ." (*Id.* at 5.) Hipes argues that Mr. Brown's testimony regarding an email attachment is contradicted by "newly discovered" evidence showing that he knew Hipes and BRI lacked a relationship with 3M.

On April 29, 2020, Hipes received a letter (the "KayPat Letter") from Mr. John McGinnis, the Chief Executive Officer of KayPat Enterprises, LLC ("KayPat"). (Doc. 98-2 at 2.) The KayPat Letter purports confirm that KayPat was working with BRI and 3M, "via their sales coordinators . . . Green World Investments," to provide BRI with 1 billion 3M masks. (*Id.*) On that same date, Hipes copied Mr. Brown on an email to a third party (the "April Email"). (Doc. 98-1 at 2.) Attached to the April Email was a file named "BRI Supply 4-29-20[2a].pdf." (*Id.*) Hipes attempted to argue at trial, and argues now, that this attachment was the KayPat Letter. Therefore, Hipes argues, Mr. Brown was put on notice

of BRI's true relationship with 3M on April 29, 2020 when he was copied on the email containing the "BRI Supply 4-29-20[2a].pdf" attachment. At trial, however, Mr. Brown testified that he did not recall reading or seeing any attachments to the April Email. (Doc. 102 at 22:3–18.)* Hipes now maintains that "newly discovered" emails contained in the files of BRI's former outside counsel, Wendy Anderson, demonstratively prove that the "BRI Supply Letter 4-29-20[2a].pdf" attachment was in fact the KayPat Letter. This, Hipes argues, directly undercuts Mr. Brown's trial testimony and shows that Hipes did not make any misrepresentations regarding BRI's relationship with 3M.

### A.

Hipes' Motion fails at the outset because none of the emails contained in Ms. Anderson's files constitute "newly discovered" evidence. Crucially, all the files produced by Ms. Anderson were in Hipes' possession at least two weeks prior to trial. And "[e]vidence is not newly discovered if it was known to, or was in the possession of, the defense before the trial concluded." *United States v. Kerr*, No. CR-11-02385-PHX-JAT, 2015 WL 4275183, at *3 (D. Ariz. July 15, 2015), *aff'd*, 709 F. App'x 431 (9th Cir. 2017) (internal marks and citation omitted). Moreover, Hipes' failure to utilize Ms. Anderson's files at trial does not permit him to now characterize them as newly discovered evidence. *See Harrington*, 410 F.3d at 601 (reasoning that a failure to discover evidence regarding a crime scene "reflects a lack of due diligence on [a defendant's] part"). Indeed, as BRI's outside counsel, Ms. Anderson would have been required to give Hipes an opportunity to access any of the "newly discovered" files at any point prior to trial. Hipes does not argue otherwise.

### B.

Hipes' Motion also fails for the independent reason that the "newly discovered" evidence would solely be used for impeachment purposes. Even if the Court were to agree that the "newly discovered" files establish what Hipes claims, his use of the files would

---

* Of note, Mr. McGinnis—the drafter of the KayPat Letter—repeatedly testified at trial that he believed he named the KayPat Letter "letter of intent for BRI Supply," not "BRI Supply Letter 4-29-20[2a].pdf." (Doc. 103 at 31:22–35:20.)

- 4 -

merely be used to impeach Mr. Brown's testimony. As an initial matter, the April Email, which was introduced at trial, appears to show the existence of at least some attachment. So, to the extent that the "newly discovered" evidence would impeach Mr. Brown's testimony that he "[did not] recall *any* attachments in [the April Email,]" the jury was fully capable of making a credibility assessment. (Doc. 102 at 22:18 (emphasis added).) Moreover, to the extent that Mr. Brown disputed that the KayPat Letter was the April Email attachment, Hipes' use of the "newly discovered" files would only serve to impeach that portion of Mr. Brown's testimony. Hipes' Motion also ignores the remainder of Mr. Brown's testimony. Mr. Brown testified that the "first thing [he] asked [Hipes]" was "[p]lease don't tell me you're a 3M distributor if you're not." (Doc. 105 at 215:23–24.) In response, Mr. Brown testified, Hipes said that he could get the masks directly from 3M and that "[h]e's a 3M distributor." (*Id.* at 215:16–19.) Furthermore, Mr. Brown testified that he had never heard of KayPat and that Hipes never said, "there's this KayPat in between me and 3M, and that's where I'm getting these masks[.]" (*Id.* at 216:20–25.) Accordingly, Hipes' "newly discovered" files would solely impeach one portion of Mr. Brown's testimony.

## C.

Hipes' Motion also fails because the "newly discovered" files come up far short of establishing that an acquittal would be probable. At trial, the government presented extensive testimony from witnesses that Hipes claimed to be an authorized 3M distributor and that money exchanged for the procurement of the 9 million 3M masks would be held in a 3M escrow account. Indeed, the files Hipes now relies on do not refute any of the allegations regarding the escrow account misrepresentations. Moreover, Hipes' motion entirely ignores the testimony of two key witnesses, Ms. Kim Shafer and Mr. James Kwak. In so doing, Hipes argues that the attachment to the April Email is sufficient to absolve himself of any criminal liability due to his repeated and numerous misrepresentations to others. Not so. The government presented evidence of repeated phone calls, emails, and text messages where Hipes claimed to be an authorized 3M distributor. For example, the

government presented evidence showing that, on May 29, 2020, Hipes sent Mr. Brown text messages with fraudulent images purporting to show the interior of a 3M warehouse and individual 3M masks that were supposedly ready for delivery. (Doc. 105 at 256–260.) In the face of the voluminous evidence presented at trial demonstrating Hipes' misrepresentations, the Court finds that the "newly discovered" files would not make an acquittal probable.

**IV.**

Accordingly,

**IT IS ORDERED** denying Defendant Dale Lawrence Hipes' Motion for a New Trial (Doc. 98).

Dated this 10th day of August, 2023.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge